## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### *Tampa Division*

IN RE:                                     Chapter 11

GOLDEN BEAR ACADEMY, INC.                  Case No.:8:10-bk-12682-CED

    Debtor.

_____/

### DISCLOSURE STATEMENT

### ARTICLE I
### (INTRODUCTION)

**COMES NOW** GOLDEN BEAR ACADEMY, INC., the Debtor-in-Possession, (hereinafter referred to as "Debtor"), provides the following Disclosure Statement to all of its known creditors in order to more fully disclose that information deemed by Debtor to be material, important and necessary for its creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance of the Plan of Reorganization (hereinafter "the Plan") presently on file with the Bankruptcy Court.

The Plan is currently on file with the Court. Creditors will be notified by the Clerk as to the hearing date on confirmation of the Plan and may attend such hearing.

The United States Bankruptcy Code provides, as a general rule that in order for a Plan of Reorganization to be deemed accepted, each class of claims must accept the Plan. A class of creditors whose rights are impaired and/or altered under the Plan are deemed to have accepted the Plan if two-thirds (2/3) in dollar amount and one-half (1/2) in number of those creditors in that class holding allowed claims vote for the Plan. The classes of claims which are not impaired under the Plan are deemed to have accepted the Plan and need not vote.

In the event that the Plan is not accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the voting creditors of any impaired class, then Debtor, under Section 1129(d) of the Bankruptcy Code, may request the Court to confirm the Plan anyway. The Court, in such a case, will confirm the Plan if all the requirements for confirmation set forth in the Bankruptcy Code, are accepted by one or more classes of creditors, are met <u>and</u> the Court finds the Plan to be "fair and equitable" to the non-accepting classes. If the Plan is not

accepted by all classes, the Debtor's estate may be liquidated under Chapter 7 of the Bankruptcy Code. In that event, the Debtor's assets would be liquidated and distributed to creditors after all costs of administration and payment of priority claims as defined by the Bankruptcy Code is effectuated.

The cost of distributing the Plan and this Disclosure Statement, as well as the cost, if any, of soliciting acceptances will be paid by Debtor. In addition, Debtor has retained the services of Buddy D. Ford, Esquire, of Tampa, Florida, in the connection with the preparation of the Plan. Payment of fees, however, is contingent on approval by the Bankruptcy Court after notice is given to all creditors and other interested parties.

## ARTICLE II
### (DEFINITIONS)

For the purposes of the Plan, unless defined elsewhere herein, the following terms shall have the respective meanings ascribed to them below:

**Administrative Expenses**. Expenses entitled to payment pursuant to 11 U.S.C. Sections 507(a)(1), 503(b) and 330, which include fees and expenses to the attorneys and accountants for the Debtor and the Committee.

**Administrative Claims Bar Date**. Means the date established by the Bankruptcy Court by which Persons asserting claims against the Debtor that arose after the commencement of the case must file an application for the allowance and payment of such Administrative Claims.

**Allowed**. Means with respect to a Claim, any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, which has not been listed by the Debtor on its Schedules as contingent, unliquidated or disputed, in either case, as to which no objection to allowance has been interposed on or before the expiration of the time within which to object to such Claim as set forth herein or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

**Assets**. Means all assets of the Debtor, of any nature whatsoever, including, without limitation, the Personal Property, claims of right, interests in contracts, and every other form of property whether real or personal, tangible or intangible, and

-2-

wherever located.

**Avoidance Action**. Means an action brought pursuant to Sections 544, 547, 548, 549, 550 or 553 of the Bankruptcy Code by or on behalf of the Debtor.

**Ballots**. Means the ballots accompanying the Disclosure Statement upon which Impaired Creditors shall have indicated their acceptance or rejection of the Plan, in accordance with the Plan and the Voting Instructions.

**Bankruptcy Code**. Title 11 of the United States Code, as amended from time to time, as applicable to Chapter 11 cases.

**Bankruptcy Court**. The United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over this Chapter 11 case, and to the extent of the reference of the Chapter 11 Case pursuant to 28 U.S.C. §157(a), the United States Bankruptcy Court, Middle District of Florida.

**Bankruptcy Rules**. The Federal rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 cases, including the local rules the Bankruptcy Court for the Middle District of Florida.

**Bar Date**. The last date for filing claims in this Chapter 11 case shall be fixed by the Bankruptcy Court.

**Business Day**. Means any day other than a Saturday, Sunday or a day which in Tampa, Florida, is a legal holiday or any day designated in Bankruptcy Rule 9006(a) as a "legal holiday."

**Cash**. Means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

**Causes of Action**. Means the claims, rights of action, suits, or proceedings, including Avoidance Actions; whether in law or in equity, whether known or unknown that the Debtor and/or its Estate, including without limitation, the Committee, if any, may hold, have a right to assert, and/or have asserted against any person or entity.

**Chapter 11 Petition**. The Petition filed in this case on May 27, 2010.

**Claim**. Shall have the meaning as defined in §101(5) of the

Bankruptcy Code.

**Claim Holder or Claimant**. A holder of any Claim.

**Claims Objection Deadline**. Means for each Claim, the later of (a) ninety (90) days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claim.

**Class**. Any group of substantially similar Claims or Equity Interests classified by the Debtor's Plan pursuant to 1123(a)(1) of the Bankruptcy Code.

**Code**. The United States Bankruptcy Code(11 U.S.C. §101 <u>et seq</u>.).

**Collateral**. Any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or other applicable law.

**Committee**. The Official Committee of Unsecured Creditors, if so appointed by the U.S. Trustee pursuant to §1102(a) of the Bankruptcy Code in the Chapter 11 Case, as it may be reconstituted from time to time.

**Confirmation**. The entry of a final, non-appealable order by the Bankruptcy Court confirming the Plan at or after the hearing pursuant to 11 U.S.C. §1129.

**Confirmation Date**. The date upon which the Bankruptcy Court enters an order confirming the Plan pursuant to §1129 of the Bankruptcy Code.

**Confirmation Hearing**. Means the hearing to consider Confirmation of the Plan under §1129 of the Bankruptcy Code.

**Confirmation Order**. Means the order of the Bankruptcy Court confirming the Plan pursuant to §1129 of the Bankruptcy Code.

**Consummation**. Means the occurrence of the Effective Date.

**Contingent Claim**. Means a Claim that has not accrued and which is dependent upon a future event which may never occur.

**Creditor**. Any party or entity having an allowed claim against

-4-

the Debtor, including but not limited to, the following:

Creditors with Administrative Expenses, Priority Creditors, Secured Creditors, and General Unsecured Creditors, as herein elsewhere defined.

**Debtor**. GOLDEN BEAR ACADEMY, INC.. Filer of a petition for relief under the Bankruptcy Code.

**Debtor-in-possession**. The Debtor in its capacity as debtor-in-possession pursuant to §1107 of the Bankruptcy Code.

**Deficiency Claim**. Means an Unsecured Claim resulting from the value of any Collateral securing an Allowed Secured Claim being less than the amount of the Secured Claim secured by such Collateral.

**Disallowed**. Shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which: (a) has been Disallowed, in whole or part, by a Final Order of the Bankruptcy Court; (b) has been withdrawn by agreement of the Debtor and the holder thereof, in whole or in part; (c) has been withdrawn, in whole or in part, by the holder thereof; (d) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a proof of claim has not been timely filed or deemed timely filed pursuant to this Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law; (e) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any proof of claim or proof of interest; or (f) is evidenced by a proof of claim or a proof of interest which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court but as to which such proof of claim or proof of interest was not timely or properly filed. In each case a Disallowed Claim or a Disallowed Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

**Disclosure Statement**. Means the Disclosure Statement (and all exhibits and schedules annexed thereto or referenced therein) that has been conditionally approved pursuant to Section 1125 of Bankruptcy Code. The Disclosure Statement contains information about the Debtor and describes the Chapter 11 Plan. The Disclosure Statement may be amended, modified or supplemented.

**Disputed Claim**. Means a Claim as to which a proof of Claim

has been filed or deemed filed and as to which an objection has been or may be timely filed by any party in interest entitled to do so, which objection, if timely filed, has not been withdrawn and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely filed for the purposes of the Plan, a Claim shall be considered a Disputed Claim, (a) if the amount of the Claim specified in the filed proof of Claim exceeds the amount of the Claim scheduled by a Debtor as other than Disputed, contingent or unliquidated; (b) if the priority of the Claim specified in the filed proof of Claim is of a more senior priority than the priority of the Claim scheduled by a Debtor; (c) if the Claim has been Scheduled as Disputed, contingent or unliquidated; or (d) if the Claim has not been Scheduled.

**Distribution**. Means any payment of cash or property that is available for disbursement to Allowed Claimants as called for under the Plan.

**Effective Date**. The date on which the Order entered by the Bankruptcy Court confirming the Plan becomes final and non-appealable.

**Entity**. Means an entity as defined in Section 101(15) of the Bankruptcy Code.

**Equity Interest**. (a) The interest of any holder of equity securities of any Debtor represented by any issued and outstanding shares of common, preferred or any other type of stock of the Debtor whether or not transferable and (b) any option, warrant or right, contractual or otherwise, to acquire or receive any such interest.

**Estate**. The Debtor's estate created pursuant to §541 of the Bankruptcy Code upon the commencement of the Chapter 11 case.

**Final Decree**. An order entered by the Bankruptcy Court closing the Chapter 11 Case after substantial consummation of the Plan.

**Final Order**. An order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in this case, which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari*, or other re-argument, or rehearing has expired and as to which no appeal, petition for *certiorari*, new trail, re-argument, or rehearing thereof has bene sought or (ii) such order or judgment of the Bankruptcy Court shall have been affirmed by the highest Court to

-6-

which such order was appealed, or *certiorari* shall have been denied, or a new trail, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

**General Unsecured Creditor**. A Creditor having a claim against the Debtor, including but not limited to deficiency claims, damages for rejection and guaranty claims which claims are not secured by a lien against property of the estate of the Debtor.

**Governmental Unit**. Means any foreign, federal, state, municipal, or other local governmental unit, including without limitation those defined under Section 101(27) of the Bankruptcy Code.

**Holder**. Means a Person or Entity holding an Interest or Claim.

**Impaired Claim**. A claim is impaired if the Plan alters the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

**Insider**. Means an insider of the Debtor, as defined in Section 101(31) of the Bankruptcy Code.

**Lien**. A lien, security interest, mortgage, deed of trust, or other charge or encumbrance on or in any real or personal property to secure payment of a debt or performance of an obligation of the Debtor.

**Payment Date**. Means the date upon which the payments under the Plan shall be made.

**Person**. Means any individual, corporation, general partnership, limited partnership, limited liability company, association, joint stock company, joint venture, Estate, business trust, governmental unit, creditors committee or other Entity.

**Personal Property**. Means those tangible and intangible Assets of the Debtor other than the Real Property.

**Plan**. The Debtor's Plan, together with all exhibits annexed

thereto or referenced therein, including any modifications, amendments, corrections or supplements thereto.

**Priority Creditor**. A creditor having an allowed claim entitled to priority pursuant to §507(a)(1) - (7) and (9) of the Bankruptcy Code, other than a Priority Tax Claim, Administrative Expense Claim or Professional Fee Claim.

**Priority Tax Creditor**. Means a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code, other than a Priority Claim, Administrative Expense Claim or Professional fee Claim.

**Proceeds**. Any Cash obtained through the liquidation of any of the Assets.

**Professional**. Any professional employed in the Chapter 11 Case pursuant to Sections 326, 327, 328, 330, 503(b)(2) or (4), 1103 or 1107(b) of the Bankruptcy Code.

**Professional Fees or Claim**. Means those fees and expenses claimed by Professionals retained by the Debtor through a Bankruptcy Court order pursuant to Sections 330, 331 and/or 503 of the Bankruptcy Code, and unpaid as of the Confirmation Date, but not including any subrogation or contribution Claim arising from any payment of any fees and expenses to a Professional other than from property of the Estate.

**Pro Rata Share**. The proportion that the amount of any Claim bears to the aggregate amount of such Claim and all other Claims in the same Class entitled to distributions from the same source of Cash, including disputed Claims.

**Reclamation Claim**. Any right to payment from the Debtor, by any person or entity arising out of the sale of good to a Debtor in the ordinary course of such person's business, provided that such person has otherwise satisfied the requirements of §5-6(c) of the Bankruptcy Code, the Uniform Commercial Code, or other non-bankruptcy statutory requirements, as applicable, and any order of the Bankruptcy Court regarding such Claims.

**Retained Assets**. Means those Assets of the Debtor that (a) were not scheduled by the Debtor as exempt under Section 522(b)(3); or (b) those Assets scheduled as exempt by the Debtor and with respect to such Assets a timely objection to exemptions was filed and sustained by Final Order of the Bankruptcy Court; and (c) are not Trust Assets.

**Schedules**.  The schedules of assets and liabilities and the statement of financial affairs, filed by the Debtor as required by §521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

**Secured Creditor**.  Any creditor whose claim has been allowed by the Bankruptcy Court as having a lien against property of the estate of the Debtor to the extent of the value of the collateral as determined by the Bankruptcy Court.

**Statement of Financial Affairs**.  The Statement of Affairs and Schedules of Assets and Liabilities filed with the Bankruptcy Court by the Debtor and any amendments thereto.

**Subordinated Claim**.  Shall mean any Claim: (a) payment of which is subordinated in right of treatment or payment to other Claims under an agreement enforceable under applicable non-bankruptcy law, but only to the extent provided in such agreement; (b) for reimbursement or contribution of a Person that is liable with the Debtor on another Creditor's Allowed Claim unless and until such Claim is paid in full; or (c) subordinated in right of treatment or payment pursuant to Sections 509(c) or 510 of the Bankruptcy Code.

**Unsecured Claim**.  Any allowed claim against the Debtor made by a Creditor who has not been designated as a Creditor with Administrative Expenses, Priority Creditor, Secured Creditor and including but not limited to the deficiency portion of an under-secured claim, claims for rejection damages and guaranty claims.

### ARTICLE III
### (HISTORY OF DEBTORS-IN-POSSESSION)

GOLDEN BEAR ACADEMY, INC., is a Florida corporation located at 6925 Mango Avenue South, Saint Peterburg, Florida.  Its primary business is the operation of a day care and after school care center located at 421 S. Goldenrod Road, Orlando, FL 32822.  The Debtor's enrollment fluctuates from approximately 120 to 180 children, depending on the season.  Karina E. Hanze is the President, sole Director and sole shareholder.  Her husband, Folker Hanze acts as the Manager for the Debtor.  Debtor's gross revenues for 2008 were $1,105,692.00 and the Gross revenues for 2009 were $1,058.573.00.

### FACTORS PRECIPITATING CHAPTER 11 FILING

The primary factor precipitating the Chapter 11 Filing was due to the Debtor's inability to service its secured obligations.

The Debtor needs to restructure its secured debt.

## POST PETITION EVENTS

Since the filing of the bankruptcy petition numerous Court proceedings have occurred all of which are of public record with the Bankruptcy Court Clerk's office, Middle District of Florida, Tampa Division, address: *Sam H. Gibbons, United States Courthouse, 801 N. Florida Avenue, Tampa, Florida 33602.* The Debtor is continuing to operate its business and manage its properties as a Debtor-in-Possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code and has filed its Chapter 11 Case Management Summary, pursuant to the *Administrative Order Establishing Initial Procedures In Chapter 11 Cases*, entered January 31, 2005. All post-petition *secured* payments have been made and the Debtor has fully complied with all the Court's orders and the United States Trustee's Guidelines.

### Tax Consequences of Plan

CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

The following discussion is a summary of certain U.S. federal income tax consequences of the consummation of the Plan to Holders of Claims and the Debtor. This summary is based on the Internal Revenue code (IRC), the U.S. Treasury Regulations promulgated hereunder, judicial authorities, published administrative positions of the Internal Revenue Service (IRS) and other applicable authorities, all as in effect on the date of this Disclosure Statement and all of which are subject to change or differing interpretations, possibly with retroactive effect. No rulings of determinations of the IRS or any other taxing authorities have been sought or obtained with respect to the tax consequences discussed herein, and the discussion below is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This discussion does not apply to Holders of Claims that are not "U.S. Persons" (as such phrase is defined in the IRC) and does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtor or to such Holders in light of their individual circumstances. This discussion does not address tax issues with respect to such Holders subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through

-10-

entities, dealers and traders in securities, insurance companies, financial institutions, tax-exempt organizations, small business investment companies and regulated investment companies). No aspect of state, local, estate, gift, or non-U.S. taxation is addressed.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF AN ALLOWED CLAIM. ALL HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE U.S. FEDERAL, STATE, LOCAL AND NON-UNITED STATES TAX CONSEQUENCES OF THE PLAN.

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, ANY TAX ADVICE CONTAINED IN THIS SUMMARY (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE IRC. TAX ADVICE CONTAINED IN THIS SUMMARY (INCLUDING ANY ATTACHMENTS) IS NOT WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE SUMMARY. EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

1.   **Consequences to Holders of Claims**

    a)   Consequences to Holders of Secured Claims

        The following discussion assumes that each Holder of an Allowed Secured Claim holds such claim as a "capital asset" within the meaning of Section 1221 of the IRC. Pursuant to the Plan, each Allowed Secured Claim, at the election of the Debtor, may (i) remain secured by a Lien in property of the Debtor retained by such Holder, (ii) paid in full in cash (including allowable interest) over time or through a refinancing or a sale of the respective Asset securing such Allowed Secured Claim, (iii) offset against, and to the extent of, the Debtor's claims against the Holder, or (iv) otherwise rendered unimpaired as provided under the Bankruptcy Code. If an Allowed Secured Claim remains secured by a Lien in the Debtor's Assets, the Holder of such Claim should not recognize gain or loss except to the extent collateral securing such Claim is changed, and the change in collateral constitutes a "significant modification" of the Allowed Secured Claim within the meaning of Treasury Regulations promulgated under Section 1001 of the IRC.

If an Allowed Secured Claim is paid in full in Cash, the Holder should recognize capital gain or loss (which capital gain or loss would be long-term capital gain or loss to the extent that the Holder has held the debt instrument underlying its claim for more than one year) in an amount equal to the amount of Cash received over the Holder's adjusted basis in the debt instrument(s) underlying its Allowed Secured Claim. To the extent that a portion of the Cash received represents accrued but unpaid interest that the Holder has not already taken into income, the Holder may recognize ordinary interest income.

b)    Consequences to Holders of Priority Claims

To the extent that the Holder of an Allowed Priority Claim receives a Distribution under the Plan, such Holder should recognize such Distribution as ordinary income and submit the appropriate withholdings based on that Holder's particular circumstances. The Disbursing Agent shall make any appropriate withholdings from such Distributions.

c)    Consequences to Holders of Unsecured Claims

Pursuant to the Plan, each Holder of an Allowed Unsecured Claim shall receive, on account of such Allowed Claim, a Pro Rata Distribution of Cash from the Plan Trust. To the extent the Holder of an Allowed General Unsecured Claim receives less than full payment on account of such Claim, the Holder of such Claim may be entitled to assert a bad debt deduction or worthless security deduction with respect to such Allowed Unsecured Claim.

To the extent that any amount received by a Holder of an Allowed Unsecured Claim under the Plan is attributable to accrued but unpaid interest and such amount has not previously been included in the Holder's gross income, such amount should be taxable to the Holder as ordinary interest income. Conversely, a Holder of an Allowed Unsecured Claim may be able to recognize a deductible loss (or, possibly, a write-off against a reserve for worthless debts) to the extent that any accrued interest on the debt instruments constituting such Claim was previously included in the Holder's gross income but was not paid in full by the Debtors. Such loss may be ordinary, but the tax law is unclear on this

point.

## 2. Certain U.S. Federal Income Tax Consequences Of The Plan To The Debtor

As noted above, because the Debtor is a "pass through" entity, the Plan will have relatively few direct Federal Income Tax consequences to the Debtor. Instead, these tax consequences must be analyzed at the Holder's level, as discussed above.

## 3. Backup Withholding And Reporting

The Debtor and Disbursing Agent will withhold all amounts required by law to be withheld from payments subject to federal taxes, if any. Those entities will comply with all applicable reporting requirements of the IRC, as required.

THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

## ARTICLE IV
## (LIQUIDATION ANALYSIS OF THE ASSETS OF DEBTOR)

An itemized analysis of the Debtor's assets are attached hereto as **Exhibit "A"** to this Disclosure Statement.

## ARTICLE V
## (FUNDING OF THE PLAN)

The Debtor's Plan will be funded by the current and future income earned by the Debtor in its operation of the business. The Debtor proposes a reasonable Plan which is proposed in good faith and not by any means forbidden by law. Attached hereto as **Exhibit "B"** and incorporated herein by reference are actual Historical Financial Data and Proforma evidencing feasibility of the Debtor's Plan.

## ARTICLE VI
### (BENEFITS OF A PLAN OF REORGANIZATION OVER LIQUIDATION)

The Plan is based upon the Debtor's belief that liquidation of the assets, would yield only minimal distribution, at best, to general unsecured creditors. Additionally, the priority and secured creditors would receive less than the contractual or legal obligations. The present management and ownership of the corporation will be retained post-confirmation. Steps will be taken to reduce overhead and expenses in order to effectuate repayment of the creditors in accordance with the Plan.

## ARTICLE VII
### (SUMMARY OF DEBTOR'S PLAN OF REORGANIZATION)

The Debtor's Plan has been proposed in good faith and not by any means forbidden by law. It is based upon the Debtor's belief that a forced liquidation of the Debtor's property will result in a substantially smaller recovery to priority and secured creditors with little or no return to unsecured creditors.

The Debtor's proposed Plan provides for the continued ownership of the Debtor's business and the continued operation of GOLDEN BEAR ACADEMY, INC.

## A.    UNCLASSIFIED CLAIM(S):

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

1.    <u>Administrative Expenses</u>. Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

Estimated administrative expenses are Thirty Thousand Dollars ($30,000.00) in attorney and accounting fees and shall be paid on or before confirmation or upon entry of an Order, if Court approval is required. The cost of the Clerk of Court for notices and the United States Trustee's quarterly fees will be paid on or before

the confirmation hearing.

2. <u>Priority Tax Claims</u>. Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief. Their proposed treatment under the Plan:

        a)    <u>11 U.S.C. Section 507(a)(8) - Taxes and Certain Other Debts Owed to Governmental Units</u>:

        i.   *Internal Revenue Service*:   The Internal Revenue Service filed its priority claim in the amount of $33,101.78 **(Claim #1)**, or as adjusted by any amended claim. This claimant shall be paid its allowed claim, in full within five (5) years after the date of the order for relief and in a manner not less favorable than the most favored non-priority unsecured claim provided for by the Plan. Pursuant to Section 1129(a)(9)(C) and (D), this claim must be paid no later than May 27, 2015, five (5) years after the date of the Order of relief (the "Petition Date"). This claim will be paid with the statutory interest at the rate in effect at the time of confirmation. This claim will be paid in monthly installments commencing thirty (30) days from the entry of the confirmation order; and

        ii.   *Department of Revenue:* This claimant shall be paid their allowed claim, in full within five(5) years from the date of assessment shown on the proof of claim plus interest at the rate set forth in the Internal Revenue Code, Section 6601 and 6621, in equal monthly installments; and

        b)   <u>11 U.S.C. Section 507(a)(3) - Wages, salaries and commissions</u>:

        These claimants, if any, shall be paid their allowed claim at the statutory rate without interest within ninety (90) days of the entry of the confirmation order.

## B.   **TREATMENT OF CLAIM(S)**:

1.   **Unimpaired**: The Unclassified claims are unimpaired. All other claims that are not impaired under this Plan in accordance

-15-

with Section 1124 of the Bankruptcy Code are as follows:

| None | |
|------|---|

2. **Impaired**: The treatment prescribed for claims in the Plan and the Disclosure Statement shall in all events refer exclusively to the allowed amount of each respective claim. In the event, the allowed amount of any claim is not determined by agreement or otherwise, prior to the effective date, then the treatment prescribed shall be deemed effective as of the date of the determination of the allowed amount of each claim by agreement or through the entry of a final order. Notwithstanding confirmation of the Plan, the Debtor shall have the right to object to any claim for any reason authorized by applicable bankruptcy and non-bankruptcy law as well as a right to assert that any claim includes amounts subject to equitable subordination or other equitable relief.

The claims in following classes are *impaired* under the Plan:

| Class I | Secured (Tax Collector) |
|---------|-------------------------|
| Class II | Secured (Ceina Capital Funding, LLC) |
| Class III | Secured (US Small Business Administration |
| Class IV | Unsecured |
| Class V | Insiders |

3. **Impairment Controversies**: If a controversy arises as to whether any Claim, or any class of Claims, is impaired under the Plan, the Bankruptcy Court shall determine such controversy.

C. **CLASSIFICATION OF CLAIMS AND PROVISIONS FOR THE PAYMENT OF CLAIMS**:

The Creditors were divided into classes, depending on the nature of their respective interest, and the treatment to be afforded under the Plan. Classes and their intended treatment are set forth below:

1. **Class I**: Class I is the secured claim of the **Orange County Tax** including any tax certificate holders, as follows:

| Claim # | Claimant | Amount |
|---------|----------|--------|
| 4 | Orange - Tax Collector - 2009 Tangible | 1,073.57 |
| 5 | Orange - Tax Collector - 2009 Real property | 19,396.69 |
| 6 | Orange - Tax Collector - 2010 Tangible | 1,006.20 |
| 7 | Orange - Tax Collector - 2010 Real property | 17,034.60 |
| | **Total** | **$38,511.06** |

To the extent any tax certificate holders claims are not duplicative of the debt owed to the tax collector, claimants in this Class shall be paid in full, plus statutory interest, at the rate in effect at the time of confirmation in sixty (60) equal monthly installments commencing thirty (30) days from the entry of the confirmation order.

These claimant(s) will retain their lien securing their claim, post-confirmation to the same extent, validity and priority as existed pre-petition. There is no pre-payment penalty for early payment.

2. **Class II**: Class II is the secured claim of **Ciena Capital Funding, LLC**, who holds a first mortgage on real property located 421 S. Goldenrod Road, Orlando, Florida, in the approximate of $1,660,214.00. The property has been valued at $1,300,000.00. The allowed secured claims will be amortized for thirty (30) years at five percent (5%) with payments commencing thirty (30) days from entry of the confirmation order.

3. **Class III**: Class III is the claim of **US Small Business Administration**, who holds a second mortgage on real property located at 421 S. Goldenrod Road, Orlando, Florida, in the approximate amount of $1,377,000.00. The claim is unsecured as the value of the property is less than the first mortgage.

4. **Class IV**: Class V shall consist of the ***general unsecured claims***. Creditors in this class with allowed claims shall be paid pro-rata $150,000.00 of their claim without interest in twenty (20) equal quarterly payments of $7,500.00 per quarter. The creditors will receive the first payment of $7,500.00 on the effective date of the Plan.

Promissory Notes will be issued to each creditor in this Class with allowed claims, that are timely filed, to evidence payments which promissory notes shall be enforceable in any Court of Competent Jurisdiction. Creditors that fail to file timely claims, whether their claims were scheduled shall not receive any distribution under the Plan.

5. **Class V**: Class V shall consist of the ***insider*** claims that may exist against the Debtor. These creditors, if any, will be subordinated until all other creditors of the plan have been paid in full. No increase in compensation will be paid to insiders post-confirmation until the Plan has been substantially consummated.

## D. EXECUTORY CONTRACTS AND UNEXPIRED LEASES:

On the Effective Date, all executory contracts and unexpired leases that exist between the Debtor and any person or entity shall be deemed rejected as of the Confirmation Date, except for any executory contract or unexpired lease (i) which has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date or, (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed prior to the Confirmation Date.

Claims arising out of the deemed rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court on or before any date established by the Bankruptcy Court for the filing of such Claims. Any Claims not filed within such applicable time period will be forever barred from assertion against the Debtor.

## E. REQUEST "CRAM DOWN" OF NON-ACCEPTING CLASSES:

The Plan requests the Court to approve the Plan of non-accepting classes.

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in a manner prescribed by §1129(b) of the Code. A Plan that binds non-accepting classes is commonly referred to as a "cram down" Plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*Creditors and Equity Interest Holders concerned with how the cram down provisions will affect your claim or equity interest should seek independent counsel, as the variations on cram down rule are numerous and complex.*

The Debtor is not required to file a motion for other pleading to seek and obtain cram down of a Plan. As a result, the Debtor will seek the Court's confirmation of this Plan in accordance with the cram down provisions of the Bankruptcy Code by *ore tenus* motion at the date and time of the Confirmation Hearing without further notice to creditors or other parties in interest.

THE FOREGOING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. CREDITORS ARE URGED TO CONSULT WITH COUNSEL, OR WITH EACH OTHER, IN ORDER TO FULLY UNDERSTAND THIS BINDING AGREEMENT BY DEBTOR. AN INTELLIGENT JUDGMENT CONCERNING THE PLAN CANNOT BE MADE WITHOUT UNDERSTANDING.

## ARTICLE VIII
### (OBJECTION TO CLAIMS)

Unless otherwise ordered by the Bankruptcy Court, after notice and a hearing, the Debtor shall have the right to review all claims made by creditors of the estate and to make and file objections to claims as it deems necessary and shall serve a copy of each objection upon the holder of the disputed claim or interest to which the objection is made.

**DATED** on this _____ day of August, 2010.

GOLDEN BEAR ACADEMY, INC.,

_____
Folker Hanze, as Manager

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this _____ day of August, 2010, a true and correct copy of the foregoing *Disclosure Statement* has been furnished by ■ CM/ECF Electronic Mail to:

Buddy D. Ford, *Attorney for Debtor*, Buddy@tampaesq.com, Nancy@tampaesq.com Peggy@tampaesq.com;

Barbara@tampaesq.com; Eric@tampaesq.com; Jonathan@tampaesq.com; Staci@tampaesq.com

W Patrick Ayers, *Attorney for Ciena Capital Funding, LLC,* wpayers@arnstein.com, pemadison@arnstein.com

Benjamin E. Lambers, *Attorney for United States Trustees' Office,* Ben.E.Lambers@usdoj.gov

United States Trustee - TPA, USTPRegion21.TP.ECF@USDOJ.GOV

and by ◼ Regular U.S. Mail to:

Internal Revenue Service, Attn: Special Procedures, 400 W. Bay Street, Suite 35045, Stop 5720, Jacksonville, FL 32202;

Securities and Exchange Commission, Branch of Reorganization, 3475 Lenox Rd, NE, Ste. 1000, Atlanta, GA 30326-1232;

Golden Bear Academy, Inc., 6925 Mango Avenue South, Saint Petersburg, FL 33707; and

20 Largest Unsecured Creditors.

Respectfully submitted,

BUDDY D. FORD, P.A.,

Buddy D. Ford, Esquire (FBN: 0654711)
Email: *Buddy@tampaesq.com*
Barbara C. Leon, Esquire (FBN: 0582115)
Email: *Barbara@tampaesq.com*
Jonathan A. Semach, Esquire (FBN: 0060071)
Email: Jonathan@tampaesq.com
115 North MacDill Avenue
Tampa, Florida 33609-1521
Telephone #: (813) 877-4669
Facsimile #: (813) 877-5543
Office Email: *Nancy@tampaesq.com*
Attorney for Debtor

```
Label Matrix for local noticing          Ciena Capital Funding, LLC          Ciena Capital Funding, LLC
113A-8                                    c/o W. Patrick Ayers, Esq.          fka BLX Capital, LLC
Case 8:10-bk-12682-CED                    302 Knights Run Avenue              1 Independence Pt, Ste.102
Middle District of Florida                Suite 1100                          Greenville, SC 29614-0001
Tampa                                     Tampa, Florida 33602-5987
Fri Aug 13 14:30:39 EDT 2010

Department of Labor and Security          Department of Revenue               Great North American Co
Hartman Building Suite 307                PO Box 6668                         2828 Forst Ln, Ste.2000
2012 Capital Circle Southeast             Tallahassee FL 32314-6668           Dallas, TX 75234-7517
Tallahassee FL 32399 0648


(p)INTERNAL REVENUE SERVICE               Matt Lentz                         Office of US Attorney
CENTRALIZED INSOLVENCY OPERATIONS         5501 Washington Blvd.              Attn Civil Process Clerk
PO BOX 21126                              Arlington, VA 22205-2706            400 North Tampa St Suite 3200
PHILADELPHIA PA 19114-0326                                                    Tampa FL 33602-4774


Orange County Tax Collector               Tanner Scott                       US Small Business Admin
PO Box 545100                             c/o Morgan & Morgan                 c/o GulfCoast Business Fin
Orlando, FL 32854-5100                    20 North Ortange Ave.               227 - 2nd Avenue N.
                                          Orlando, FL 32801-2414              PO Box 54
                                                                             Saint Petersburg, FL 33731-0054


United Portfolio Management
1942 Lexington Ave N.
Suite #1
Roseville, MN 55113-6401
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Internal Revenue Service                  End of Label Matrix
P.O. Box 21126                            Mailable recipients    12
Philadelphia, PA 19114                    Bypassed recipients     0
                                          Total                  12
```